716

(No. 75-CV-385—<span style="background:black"></span>)

IN RE APPLICATION OF GENE A. GOODWIN.

*Opinion filed September 8, 1976.*

GENE A. GOODWIN, Pro Se.

WILLIAM J. SCOTT, Attorney General of Illinois; PAUL WEST, Assistant Attorney General.

PER CURIAM.

This claim arises out of a criminal offense that occurred on September 14, 1974, at 1549 South Keeler Avenue, Chicago. Gene A. Goodwin, Claimant, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, (Ill.Rev.Stat., 1973, Ch. 70, Sec. 70, 71, et seq.) (hereafter referred to as the "Act").

On July 15, 1975, this Court filed an opinion dismissing the claim and thereafter on motion of the Claimant a hearing was granted by the Court under Section 9 of the Act.

The issue presented to this Court is whether the Claimant's delay in reporting the crime to the police was reasonably practical under the circumstances.

The facts as testified to by the Claimant were that the Claimant, while walking home at 1549 South Keeler, Chicago, was accosted by a man with a rifle who demanded Claimant's money. The Claimant handed the assailant his money which amounted to $7.00. The assailant then fired a shot, turned around, and walked away.

The Claimant felt no pain. He raised his clothes and felt and looked for blood, but saw none. The Claimant then went home, arriving about 10 o'clock p.m. and went to bed.

The Claimant woke up the following afternoon at about 1 o'clock p.m. on September 15, 1974, with severe stomach pain. He took Alka Seltzer and Bromo Seltzer to ease the pain. His stomach then began swelling. He still did not realize what was wrong with himself. He found no bullet hole or blood on his stomach, but did see a minor scratch which he assumed occurred on his job which was loading trucks.

At about 12:45 a.m. on September 16, 1974, the pain became unbearable and the Claimant went to the hospital where it was discovered that the Claimant had a 22 caliber bullet in his stomach. The police were notified at the hospital.

Claimant initially failed to report the theft of his $7.00 because, he stated, in the black ghetto where he lives thefts of small amounts of money were common and because of their frequency were rarely reported. However, as soon as the Claimant discovered that he had been shot, the police were notified—some 26 hours after the crime.

The assailant was never apprehended.

Section 3 of the Act provides:

A person is entitled to compensation under the Act if . . . (c) the appropriate law enforcement officials were notified of the perpetration of the crime allegedly causing the death or injury to the victim as soon after its perpetration as was reasonably practicable under the circumstances . . .

This Court has frequently stated that one of the obvious objects of the Act is to encourage prompt notification of crimes to law enforcement officials and full cooperation with law enforcement officials.

Because of the fact that the assailant in this case was carrying a rifle, it is apparent that an immediate notification of the crime to the police might have resulted in the apprehension of the criminal. Notification 26 hours later greatly prejudiced possibility of apprehension of the assailant.

We do not doubt Claimant's testimony that in a high crime area minor thefts go unreported, but it is precisely this situation that the Act seeks to remedy by offering compensation to those who do report crimes. Conversely, those persons who do not promptly report crimes cannot expect compensation under the Act.

This Court finds, therefore, that the Claimant failed to notify appropriate law enforcement officials as soon after the perpetration of the crime as was reasonably practical under the circumstances and is not eligible for compensation under the Act.

This claim is, therefore, dismissed.